[Civ. No. 6242. Second Appellate District, Division Two.—October 25, 1929.]

F. A. KNIGHT, Appellant, v. D. B. CARLIN, Respondent.

P. H. Goddard for Appellant.

Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Respondent.

CRAIG, J.—The parties to this action agreed in writing on April 11, 1923, that the appellant should perform the necessary legal work for respondent in connection with the proposed construction of an apartment house, for a fee of seven thousand five hundred dollars. Respondent agreed to pay one-third thereof "when the main contract for the construction of the building is let," one-third "when the

building is half completed," and the balance upon completion, and delivery of ownership certificates to individual buyers of respective apartments, "this fee to be purely contingent and nothing to be paid for legal services unless the proposition goes." It was provided that the services should consist of "all legal proceedings, giving advice to Mr. Carlin and to his selling agency, and drawing all necessary legal documents until the enterprise is completed and certificates of ownership delivered to purchasers." On January 22, 1926, appellant filed suit for the full amount specified, alleging that the contract was let, that the building was half completed on August 15, 1925, and that it was completed on September 15, 1925; that he performed all services required, but that the certificates of ownership were not delivered because of the interference of the defendant and the latter's refusal to comply or to permit compliance with their agreement in this respect. The defendant answered, admitting the execution of the contract of employment, but denying the performance of the legal services in accordance therewith. It was also alleged that the defendant did not agree to pay any portion of the fee unless the apartments were successfully launched, that it was wholly contingent upon the creation of a bonded indebtedness and the sale of bonds, and that there should be ready for the buyers of apartments a completed, finished and working apartment house building; that it became necessary to employ other counsel at a cost of two thousand five hundred dollars to prepare the trust deed and bonds, that the bonds were not sold, the project did not "go," and the contingency upon which the plaintiff's fee depended had never accrued. Damages in the sum of two thousand five hundred dollars were demanded by a cross-complaint. Upon conclusion of the plaintiff's evidence, a motion for nonsuit was interposed, which was granted, and he appeals.

It has uniformly been held that in entertaining such a motion conflicting evidence must be disregarded, and every inference that may be fairly drawn from all of the evidence must be viewed in the light most favorable to the plaintiff's claim. (*Anderson* v. *Wickliffe,* 178 Cal. 120 [172 Pac. 381]; *Carter* v. *Canty,* 181 Cal. 749 [186 Pac. 346].)

Applying this rule, we think the nonsuit was improperly ordered. It is true that it was developed during the trial, and is argued in the respondent's briefs, that there was some affirmative evidence tending to support the latter's theory that the project was ultimately worked out differently from that which he at first had in mind. He was called as a witness for the plaintiff, and testified that the completed structure and system of financing were entirely different from those specified in the original agreement, and that the plaintiff did not consummate the original scheme of creating a bonded indebtedness and disposing of the securities. The motion did not specify, however, as a ground for nonsuit, nor can it truthfully be said, that there was no substantial evidence adduced by the plaintiff in support of his allegations which rendered all of the evidence susceptible of two constructions. It was testified by the plaintiff, and admitted by the defendant, that Knight had for some years specialized in the promotion of structures like that involved in the instant case, known as ''own-your-own'' apartment houses, and that he was employed upon this occasion for the promotion of an enterprise of that character. The defendant and other witnesses testified that he was the owner of three lots at the corner of First Street and Alboni Place, in the city of Long Beach, that the new building was originally intended to be erected upon said corner, and that he in fact did place it upon the basement which the plaintiff caused to be excavated, on the third lot from the corner, and that he built a croquet court and provided a driveway or ''runway'' upon the others, for the use of tenants. Appellant testified that he had under way a system of financing conforming to the original plan, but that the plaintiff ignored him and incorporated, and the defendant admitted that he had financed the project by selling stock in the corporation to purchasers or occupants of certain apartments, who were charged a nominal rental to defray incidental expenses. One of the stockholders occupying a double apartment paid but twenty-five dollars per month. Carlin admitted that he advertised in various newspapers: ''Ambassador Apartments, East First Street and Alboni Place—Just Off Ocean Boulevard, now ready for occupancy, Own your own home in this fireproof building. Single, double and four-room apartments

can be bought on very easy terms." Appellant also testified, "I know it is a go; the building is there." There is other evidence of a like tenor which, as contended by the appellant, tended to establish the fact that upon a discovery of a more advantageous method of financing, the respondent secretly dealt with others, completed the apartment house in substantially the manner first contemplated, and declined to compensate him for his services. The superintendent who initiated the work under Knight, testified that he continued until the structure was about ninety per cent complete and one suite was then ready for occupancy.

The order and judgment appealed from are reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.